Kenneth M. **BAKER,**
Petitioner–Appellant,

v.

**UNITED STATES of America,**
Respondent–Appellee.

No. 90–15009.

United States Court of Appeals,
Ninth Circuit.

Submitted Jan. 15, 1991.*

Decided May 8, 1991.

Terry Admur, Pasadena, Cal., for petitioner-appellant.

Mark Edelman, Asst. U.S. Atty., Fresno, Cal., for respondent-appellee.

Before TANG, BOOCHEVER and NOONAN, Circuit Judges.

BOOCHEVER, Circuit Judge:

## OVERVIEW

After a plea of *nolo contendere*, Baker was convicted of misbranding certain drugs, in violation of the Federal Food, Drug, and Cosmetic Act (FDCA). He moved to vacate his sentence under 28 U.S.C. § 2255, for lack of federal jurisdiction, arguing that the transactions set out in the information charging him were wholly intrastate in nature. The district court found a sufficient nexus to interstate commerce. We AFFIRM.

## BACKGROUND

Baker manufactured a drug that was sold as synthetic heroin. As sold, the package contained no labels identifying the drug, its effects, or the proper dosage. Baker and others entered a *nolo* plea to a seven-count superseding indictment charging them with violating 21 U.S.C. § 331(k) [1] as they

caused an act to be done, and aided and abetted the act being done with respect to a drug, an analog of fentanyl, while such drug was held for sale, after components of the drug were shipped in interstate commerce, which act resulted in the drug being misbranded.

Baker was sentenced to three consecutive one-year terms on the first three counts, and a four-year term of probation in exchange for a suspended sentence on the remaining four counts. Under the plea agreement, Baker reserved his right to appeal the denial of his motion to dismiss for violations of the Speedy Trial Act, the exercise of which was ultimately unsuccessful.

Baker filed a "Petition for a Writ of Error Coram Nobis" in the district court which was construed as a motion to vacate his sentence pursuant to 28 U.S.C. § 2255. The motion was denied and this appeal was taken.

## DISCUSSION

Essentially, Baker's argument below and on appeal is that notwithstanding that the component parts of the synthetic heroin traveled in interstate commerce, the manufacture and distribution of the end product all occurred in California, so that the interstate commerce link is missing. In other words, he reads § 331(k) to require that the misbranded drug, the synthetic heroin made from the components shipped in interstate commerce, and not the components alone travel in interstate commerce.

A plain reading of § 331(k) supports affirmance. Reading only the part of the relevant subsection, the question is whether Baker did anything with respect to the drug, while it was held for sale and after shipment in interstate commerce, that results in the drug being misbranded. He did. There was a failure to label, done while or before the synthetic heroin was held for sale, which occurred after a shipment in interstate commerce.

The shipment in interstate commerce, of course, did not involve the synthetic heroin but the ingredients combined to make it. The FDCA defines the term "drug," however, to include "articles intended for use as a component of" a recognized drug. *See* 21 U.S.C. § 321(g)(1)(A) & (D). Thus, the "shipment in interstate commerce" requirement is satisfied even when only an ingredient is transported interstate. We are, furthermore, guided to this result by the Supreme Court's admonitions that "Congress fully intended that the [FDCA's] coverage be as broad as its literal language indicates," *United States v. Bacto-Unidisk*, 394 U.S. 784, 798, 89 S.Ct. 1410, 1418, 22 L.Ed.2d 726 (1969), and that courts generally beware the creation of "loopholes"

---

1. Section 331(k) provides:
   The following acts and the causing thereof are prohibited:
   (k) The alteration, mutilation, destruction, obliteration, or removal of the whole or any part of the labeling of, or the doing of any other act with respect to, a food, drug, device, or cosmetic, if such act is done while such article is held for sale (whether or not the first sale) after shipment in interstate commerce and results in such article being adulterated or misbranded.

that have no basis in statutory language, *Kordel v. United States*, 335 U.S. 345, 349, 69 S.Ct. 106, 109, 93 L.Ed. 52 (1948).

In addition, the better-reasoned cases are consistent with this reading, concluding that the "shipment in interstate commerce" requirement of § 331(k) is satisfied when the misbranded drug held for intrastate sale contains ingredients shipped in interstate commerce. *See United States v. An Article of Food*, 752 F.2d 11, 14 (1st Cir. 1985) ("Because it is undisputed that the potassium nitrate added to the seized beverages was shipped in interstate commerce, those beverages [, although mixed and sold only intrastate,] clearly fall within the scope of statutory forfeiture jurisdiction."); *United States v. Dianovin Pharmaceuticals, Inc.*, 475 F.2d 100, 103 (1st Cir.), *cert. denied*, 414 U.S. 830, 94 S.Ct. 60, 38 L.Ed.2d 65 (1973) ("The appellants' use of components shipped in interstate commerce to make vitamin K for injection brought their activities within § 331(k)...."); *see also United States v. Cassaro, Inc.*, 443 F.2d 153, 155–56 (1st Cir.1971); *Accord United States v. Articles of Drug*, 625 F.2d 665, 671 (5th Cir.1980).

Baker's whole argument relies on a thirty-year-old case from the Eastern District of Michigan, *United States v. An Article or Device Consisting of 31 Units (Gonsertron)*, 180 F.Supp. 52 (E.D.Mich.1959). There, the district court, in a six-paragraph decision, dismissed the government's motion to seize a misbranded device. Nine component parts, apparently all of which traveled in interstate commerce, were used in manufacturing the device. The court concluded that 21 U.S.C. § 321(h)—defining "device"—"does not attempt to regulate devices solely by reason of the fact that they contain component parts shipped in interstate commerce." *Id.* at 53.

The government attempts to distinguish *Gonsertron* on the ground that it "involved a device, not drugs" and that "the Act specifically includes within its definition the *components* of a drug." (emphasis added). This distinction is of no help as the definition of "device," albeit with slightly different language, also includes *compo-*

*nents* of devices. 21 U.S.C. § 321(h). The better distinction is simply that, as the government points out, *Gonsertron* was incorrectly decided, and, in any case, does not represent the current state of the law. Indeed, a subsequent case in its own jurisdiction has thrown the result in *Gonsertron* into doubt.

In *United States v. 39 Cases ... Michigan Brand Korleen Tablets*, 192 F.Supp. 51 (E.D.Mich.1961) the same district judge who wrote *Gonsertron* held that tablets compounded in Michigan from ingredients that moved in interstate commerce were properly seizable, reasoning that "[i]t would be a strained interpretation to say that each 'drug' component falls within the jurisdiction of the Act, being shipped in interstate commerce, but, when compounded together to form another 'drug,' the finished product is not being held for sale after shipment in interstate commerce." *Id.* at 52. The judge offered the following distinction between the cases:

> In [*Gonsertron*], the Court[ ] held that ... [a] device is not subject to the jurisdiction of the Act where the only components shipped in interstate commerce were either a minor ingredient of the final product or several commonly used components which lost their identity within the newly manufactured device. In contrast, in the case at bar, the 'drugs' comprising the Korleen Tablets are the very heart of the manufactured and tableted 'drug' and were proclaimed as such to the public.

*Korleen Tablets*, 192 F.Supp. at 52.

This distinction, heavily relied upon by Baker, seems fairly strained—especially in light of his *nolo* plea. There is nothing in the record supporting this loss of identity theory. Because Baker entered a plea of *nolo contendere* he cannot now unravel the factual basis of the government's conviction. Thus, we expressly hold that he is estopped from making the "loss of identity" argument by his *nolo* plea. Moreover, even if appropriate, Baker's theory cannot withstand the Supreme Court's opinion in *United States v. Generix Drug Corp.*, 460 U.S. 453, 457–61, 103 S.Ct. 1298, 1300–02,

75 L.Ed.2d 198 (1983). In *Generix*, the Court decided that the term "drug" as used in the FDCA includes both active and inactive ingredients of chemical compounds. *Id.* Thus, whether the ingredient is a main one or minor one, or whether it is identifiable or unidentifiable after combination is inconsequential.

### CONCLUSION

We hold that wholly intrastate manufactures and sales of drugs are covered by 21 U.S.C. § 331(k) as long as an ingredient used in the final product travelled in interstate commerce. Moreover, we conclude that Baker's plea of *nolo contendere* prevents him from invoking the "loss of identity" theory as a means of distinguishing his case from the great weight of precedent against him. In any case, we find that Baker's attempted distinction, even without the operation of the *nolo* plea, is not viable in light of Supreme Court precedent.

AFFIRMED.