UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


United States of America

    v.                           Criminal No. 15-cr-057-01LM
                                      Opinion No. 2016 DNH 166

Mustafa Hassan Arif


**O R D E R**

The government has charged defendant, Mustafa Arif, with wire fraud (Count I) and four counts of introducing misbranded drugs into interstate commerce (Counts II – V). The charges arise from alleged misrepresentations Arif made on his websites offering various drugs for sale.

To prove that Arif committed wire fraud, the government must prove that he participated in a scheme to defraud with the intent to defraud. To prove that Arif introduced misbranded drugs into interstate commerce, the government must prove that he acted with the intent to defraud or mislead.[1]

---

[1] Although the government may charge a defendant with introducing misbranded drugs into interstate commerce ("misbranding of drugs") as a misdemeanor, see 21 U.S.C. §§ 331(a) and 333(a)(1), the government has charged Arif with felony misbranding of drugs under 21 U.S.C. §§ 331(a) and 333(a)(2). Such a charge requires the government to prove that Arif committed the offense with the intent to defraud or mislead.

This criminal trial is highly unusual in two respects. First, it is a bench trial. <u>See</u> doc. no. 42. Second, the parties have agreed to 19 separate, detailed factual stipulations. <u>See</u> doc. no. 94. Pretrial briefing revealed a third potential twist: the possibility of Arif pursuing hybrid representation. A brief summary of the procedural history follows.

In his first trial brief, Arif summarized the four defenses he intends to pursue at trial, including a defense that he lacked the intent to defraud on all five counts.[2] <u>See</u> doc. no. 87. With respect to the lack of intent to defraud defense, counsel indicated in a footnote that counsel did "not endorse[]" that defense and that "Arif seeks leave to argue this position pro se." <u>Id.</u> at n.1

The court scheduled a hearing to address Arif's request for hybrid representation. Prior to the hearing, the government filed a "memorandum regarding pro se representation" (doc. no.

---

[2] The government argues in their briefs that an "intent to mislead" is broader than an "intent to defraud." For purposes of this order, the court presumes, without deciding, that the the term "intent to mislead" under the misbranding of drugs statute is, for all intents and purposes, identical to an intent to defraud. <u>See</u> <u>United States v. Watkins</u>, 278 F.3d 961, 966-69 (9th Cir. 2002). Therefore, the court will refer to the intent element of the charged offenses as "intent to defraud."

2

98), in which it opposed allowing the type of hybrid representation proposed by Arif (i.e., allowing Arif to have counsel represent him on all but the "intent to defraud" theory of his defense, and permitting Arif to represent himself on that theory of his defense). The government proposed that the court allow Arif to represent himself pro se, after a knowing waiver, but appoint standby counsel.

The hearing took place on September 2, 2016. Early on in the hearing, defense counsel moved to seal the hearing so that counsel and Arif could address the court on an ex parte basis, and the court could hear privileged details about the genesis of the hybrid representation request. The court granted that request and heard from Arif and counsel.

After the court reopened the hearing to the public, the court proposed that the legal issue at the heart of the dispute between Arif and his counsel appeared ripe for ruling by the court as a matter of law. That is, the court could decide whether Arif's defense to the "intent to defraud" element in all five counts was a legal and viable defense to the charges in the superseding indictment. In so doing, the court would presume the truth of Arif's subjective, good faith defense, and consider any relevant factual stipulations.

Arif agreed that the question was a matter of law for the

3

court, and that the court's ruling on the question would likely obviate his need for hybrid counsel. That is, in the event that the court rules that Arif's intent to defraud defense is legally viable, Arif's counsel would agree to pursue that defense at trial on his behalf. On the other hand, in the event the court ruled that Arif's defense was not viable, Arif acknowledged that he would not pursue that defense on a pro se basis at his trial, but would reserve his appellate rights on the issue. Arif requested that the court decide this issue as a matter of law prior to trial.

The government agreed that the issue could be decided as a matter of law. Additionally, the government offered that it had proposed in discussions with defense counsel, although in an entirely different context, a similar pretrial resolution of this issue. The court permitted further briefing on the issue by the parties, (Arif, on a pro se basis), and set a deadline of September 9, 2016.

The court must clarify the limited universe of facts it is considering here. There are only two appropriate sources for the court: (1) the parties' 19 factual stipulations; and (2) facts asserted by Arif in his pro se briefs that the court construes favorably to him for purposes of this legal analysis, such as his statement that he had a good faith belief in the

4

efficacy of the drugs offered for sale on his websites.  The court will not consider any statement by Arif that he has included in his briefs that could be construed adversely to him, such as his admission that the purpose of the false testimonials on his websites was to induce customers to purchase his drugs.

Having reviewed the parties' briefs on this issue, the court begins by summarizing the relevant factual stipulations. See doc. no. 94.

## Stipulated Facts

Mustafa Arif owned and operated MAK International.  Arif and/or MAK International created and maintained more than 1,500 websites, more than 1,000 of which offered drugs[3] for sale.  The remaining websites acted as referral sites, directing potential customers to one or more of the websites offering drugs for sale.

The websites contained several representations regarding the efficacy and/or cure rates of the various drugs.  They also contained links to research papers, which discussed clinical

---

[3] The Food, Drug, and Cosmetic Act defines the term "drug," in relevant part, as "articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals; and . . . articles (other than food) intended to affect the structure or any function of the body of man or other animals . . . ."  21 U.S.C. § 321(g)(1).

tests conducted on the particular drug being promoted, as well as testimonials from customers.  "All claims on all web sites regarding efficacy and/or cure rates were unsupported by clinical studies conducted" by Arif or any entity Arif controlled.  Doc. no. 94 at ¶ 7.  The research papers listed on the websites "were plagiarized and were not written about the drugs they purported to reference."  Id. at ¶ 8.  Additionally, "[t]he testimonials listed on the websites were fictitious." Id. at ¶ 9.

Although Arif managed the websites and his business from Pakistan, the websites were registered to entities with addresses listed in other countries, including Italy, New Zealand, Australia, Norway, and Denmark.  Any mail sent to those addresses was forwarded to Arif in Pakistan.  Arif used these addresses to make prospective customers more comfortable purchasing the products.

The drugs sold on Arif's websites "purported to be homeopathic remedies," doc. no. 94 at ¶ 16, or "purported to contain herbs and other natural ingredients as listed," id. at ¶ 17, consistent with naturopathic remedies.  Both homeopathy and naturopathy are alternative systems of medicine that are practiced, in good faith, by many believers.

In the process of purchasing drugs from Arif's websites,

6

customers were redirected to a different website, for a company called "CCNow," that processed all sales for Arif's websites. CCNow is a company located in Minneapolis, Minnesota. CCNow transmitted the proceeds of all the sales, less a fee, to Arif's bank accounts located in England and Pakistan.

Before completing their purchases through CCNow, Arif's customers were required to read and certify the following:

> I understand and acknowledge the following: (a) actual product packaging and materials may contain more and/or different information than that shown on the website through which the product(s) are purchased; (b) I will read and follow all labels, warnings and directions in connection with using or consuming the product(s), and will contact a health care provider immediately if I suspect I have a medical problem or reaction; (c) the content on this website is for reference purposes and is not intended to substitute for advice given by a physician, pharmacist, or other licensed health-care professional; (d) the product(s) purchased are not intended to diagnose, mitigate, treat, cure or prevent any disease or health condition, and I will not use any information or statements contained on the website through which this product is purchased, or contained on or in such product(s), for such purposes.

## Discussion

Arif was indicted on one count of wire fraud in violation of 18 U.S.C. § 1343 (Count I) and four counts of misbranding of drugs in violation of 21 U.S.C. §§ 331(a), 333(a)(2), and 352(a) (Counts II – V). The parties agree that intent to defraud is an element of both wire fraud and misbranding of drugs as charged

7

in the superseding indictment.

Arif intends to argue at trial that he is not guilty of any of the charges because he had a good faith belief in the efficacy of the drugs sold on the websites. He intends to argue that his good faith belief proves that he did not have an intent to defraud and such evidence will, therefore, require a verdict of not guilty on all counts. The government disagrees and argues that even assuming the truth of Arif's subjective, good faith belief in the efficacy of the drugs, such a personal good faith belief is not relevant to the intent to defraud element based on the charges in the superseding indictment. The parties have agreed that the question is one of law that the court can decide in advance of trial.

In addressing Arif's argument, the court assumes for purposes of this order that the evidence at trial would show that Arif had a good faith belief in the efficacy of the products he sold on his websites.

I.    Arif's Good Faith Belief in the Efficacy of the Drugs

At trial, Arif intends to offer the defense that he had an honest belief the drugs he sold on his websites were efficacious; that is, that he believed each drug would

successfully treat the specified diseases.[4]  Arif contends that, in light of his good faith belief, "the government misconstrues *as a matter of law* the very essence of what constitutes actual fraud in a case such as this."  Doc. no. 103 at ¶ 3 (emphasis in original).  Arif reasons that "once it is averred that defendant *may have had an honest belief that his remedies work* then, in the very same breath, the allegation is actually conceded that defendant [never] sold his remedies to intentionally 'defraud' his customers."  Id. (emphasis in original).

"The elements of wire fraud under 18 U.S.C. § 1343 are '(1) a scheme or artifice to defraud using false or fraudulent premises; (2) the defendant's knowing or willing participation in the scheme or artifice with the intent to defraud; and (3) the use of the interstate wires in furtherance of the scheme.'" United States v. Foley, 783 F.3d 7, 13 (1st Cir. 2015) (quoting United States v. Appolon, 715 F.3d 362, 367 (1st Cir. 2013)). Intent to defraud "excludes false statements honestly believed to be true and promises or predictions made in good faith." United States v. Mueffelman, 470 F.3d 33, 36 (1st Cir. 2006) (discussing intent to defraud as an element of mail fraud); see

---

[4] Arif asserts numerous other arguments with respect to his lack of an intent to defraud.  Arif's primary argument, however, is that he had a good faith belief in the efficacy of the drugs. The court addresses only Arif's primary defense in this order.

9

also [United States v. Martin, 228 F.3d 1, 15 (1st Cir. 2000)](#) (noting identical analysis of the elements of wire fraud and mail fraud).[5]

Arif's good faith defense is based on his misunderstanding of the charges against him. Arif is not being charged with selling drugs that did not work as intended, for selling homeopathic or naturopathic remedies, or for harming his customers. Arif is charged with making misrepresentations on his websites, including plagiarizing research papers about other drugs, creating false testimonials, inventing clinical studies which did not exist, and creating fake addresses for the entities to which the websites were registered. Arif does not contend in his briefs that he had a good faith belief in the truth of the false statements on his websites. Rather, Arif intends to offer evidence that he had a good faith belief in the efficacy of the drugs, and he argues that this belief is a complete defense to the intent to defraud element of his charged offenses.

---

[5] As discussed above, the misbranding of drugs charges in the superseding indictment also require the government to prove that Arif acted with the intent to defraud. Neither party argues, and the court has been unable to locate, any case law holding that the test for "intent to defraud" in the misbranding statute is different in any material respect from that in the wire fraud statute.

10

Arif's defense is nearly identical to the one the defendant raised in Mueffelman, 470 F.3d at 36. In Mueffelman, the defendant and a partner created a business venture, which offered to assist persons who were poor or had low credit ratings in acquiring homes. The venture charged clients for enrolling in the assistance program. Throughout the venture's existence, the defendant made several misrepresentations to attract clients, including guaranteeing financing terms which it could not secure, inventing the existence of established relationships with lenders and government-supported loan programs which did not exist, and falsely claiming that the venture was an "investor, when in fact it did no more than seek lenders." Id. The defendant was convicted of several counts of mail fraud.

On appeal, the defendant in Mueffelman admitted he made the various false statements as alleged in the indictment. He argued, however, that he did not have the intent to defraud his clients, which, as with wire fraud, is a necessary element of mail fraud. In support, the defendant argued that he lacked the intent to defraud "because he optimistically believed that his programs would succeed" and that "his business was not a sham enterprise." Id. at 36.

11

The First Circuit affirmed the defendant's conviction.  The court acknowledged that a good faith defense on intent to defraud is an absolute defense available to defendants.  Such a defense is available where a defendant can show he honestly believed in the truth of his alleged false statements, or made promises and predictions in good faith.  Id. at 36-37.  On the other hand, the court stated:

> This is a far cry from saying that Mueffelman was free knowingly to make false statements to secure money from clients because he believed that his enterprise would succeed.  One can be optimistic, even with good reason, about the prospects of a business, but one still cannot, for example, sell stock by lying about the business' past earnings or the presence of booked orders that do not exist.  A prediction made in good faith may be sheltered; a statement of fact known to be false is not.

Id. at 37.  Every other circuit to address this question has found that a subjective good faith belief in the efficacy of a product cannot negate intent to defraud where a defendant made false statements about the product to induce purchase of the product.  See United States v. Spirk, 503 F.3d 619, 622 (7th Cir. 2007) (good faith belief that investors would profit does not negate an intent to defraud because "people who want to raise money cannot obtain it by deceit and then try to persuade a jury that their intentions were good"); United States v. Benny, 786 F.2d 1410, 1417 (9th Cir. 1986) (an honest belief in

12

the truth of misrepresentations may negate an intent to defraud; a good-faith belief that the victim will suffer no loss is "no defense at all"); United States v. Stull, 743 F.2d 439, 446 (6th Cir. 1984) (good-faith belief in enterprise does not excuse false or reckless representations); United States v. Townley, 665 F.2d 579, 585 (5th Cir. 1982) ("[N]o amount of good-faith intent to deliver and good-faith belief in the ultimate success of the business could constitute a good-faith defense exculpating [the defendant] from criminal liability for his false and misleading statements in connection with the ads, letters, and statements by [the defendant] . . . , by which the investors/purchasers funds were obtained."); Sparrow v. United States, 402 F.2d 826, 828 (10th Cir. 1968) ("[N]o matter how firmly the defendant may believe in the plan, his belief will not justify baseless, false, or reckless representations or promises."); United States v. Painter, 314 F.2d 939, 943 (4th Cir. 1963) ("[N]o amount of honest belief that his corporate enterprise would eventually succeed can excuse the willful misrepresentations by which the investors' funds were obtained.").

Arif distinguishes his case because it involves what he calls "medicinal marketing." He believes that bona fide disputes over a product's efficacy necessarily negate any

13

fraudulent intent as a matter of law, citing Am. Sch. Of Magnetic Healing v. McAnnulty, 187 U.S. 94 (1902). The holding of McAnnulty might weigh in Arif's favor at trial if the evidence shows, for example, that he confined the representations on his websites to statements about his subjective belief in the drugs' therapeutic value, or that he posted on his websites actual consumer testimonials about the drugs' efficacy or actual opinions from medical professionals. But, Arif is not making this argument in his briefs. Instead, he is arguing on the basis of his honest belief in the efficacy of the drugs. Based on the charges in the superseding indictment, that good faith belief is irrelevant, as a matter of law, on the question of intent to defraud.

To illustrate the problem with Arif's legal argument, the court will use a hypothetical example. Suppose that, in searching for an attorney to represent him in a case, a defendant interviews a number of attorneys. One of those attorneys holds a good faith belief in himself as the "greatest defense attorney in the world." During his interview, the lawyer provides the defendant with the following: false newspaper clippings lauding the lawyer's performance in trials; fake testimonials from non-existent defendants explaining how the lawyer secured their acquittals; and a fabricated American

Bar Association story stating that the attorney has won 99% of his criminal trials. He also provides the defendant with a fake address for his office, located in an upscale area to make the defendant more comfortable with hiring him. Under Arif's view of the law, the lawyer did not intend to defraud the defendant because the lawyer truly believed he was an incredibly effective defense attorney, regardless of any misrepresentations he made to induce the defendant to hire him. For obvious reasons, that is simply not the way the law works.

In short, in light of the charges in the superseding indictment, Arif's intent to defraud depends on whether he intended to deceive potential customers about his drugs to induce them to purchase those products. Therefore, as a matter of law, Arif's good faith belief in the efficacy of his drugs is irrelevant as to his intent to defraud in this case, and is not a viable defense.

II. Summary

Arif argues, as a matter of law, that his honest belief in the efficacy of his products absolves him of any intent to defraud, which is an element of all of the charged offenses. Although good faith is a defense to an intent to defraud, for the defense to be viable in this case, Arif would need to show

15

that he had a good faith belief that the allegedly false representations on his websites were truthful (i.e., that the research papers were actually written about the drugs on his website, or that the client testimonials were drafted by actual clients about the drugs on his websites). In light of the charges in the superseding indictment, however, Arif's good faith belief in the efficacy of his products is not, under these circumstances, a viable defense to the charge that Arif acted with an intent to defraud (for purposes of the wire fraud charge) or an intent to defraud or mislead (for purposes of the misbranding of drugs charges).

In short, the good faith defense, as argued by Arif in his briefs before the court, is not a viable defense to the charges in the superseding indictment.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

September 16, 2016

cc:  William E. Christie, Esq.
     Sarah E. Hawkins, Esq.
     Arnold H.  Huftalen, Esq.
     Robin D.  Melone, Esq.
     Kirsten B. Wilson, Esq.

16