**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

TUYET THI-BACH NGUYEN,
*Defendant-Appellant.*

No. 07-30197

D.C. No.
CR-05-00270-05-
RSL

OPINION

Appeal from the United States District Court
for the Western District of Washington
Robert S. Lasnik, District Judge, Presiding

Argued and Submitted
December 8, 2008—Seattle, Washington

Filed May 15, 2009

Before: Robert R. Beezer, Ronald M. Gould, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Gould;
Partial Concurrence and Partial Dissent by Judge Callahan

## COUNSEL

Sheryl Gordon McCloud, Law Offices of Sheryl Gordon McCloud, Seattle, Washington, for appellant Tuyet Thi-Bach Nguyen.

Jeffrey C. Sullivan and Susan Loitz, U.S. Attorney's Office, Seattle, Washington, for appellee United States of America.

_____

**OPINION**

GOULD, Circuit Judge:

Tuyet Nguyen ("Nguyen") appeals her jury conviction and sentence for conspiracy to transport stolen property in interstate commerce in violation of 18 U.S.C. § 2314, for two counts of the transportation of stolen property in interstate commerce in violation of 18 U.S.C. § 2314, for three counts of the introduction of misbranded medical devices into interstate commerce in violation of 18 U.S.C. § 352(a), and for conspiracy to commit money laundering in violation of 18 U.S.C. § 1956. We have jurisdiction under 28 U.S.C. § 1291. We affirm in part and reverse in part, and we remand for retrial and resentencing.

**I**

On July 13, 2005, a grand jury returned an indictment against Nguyen, her husband Phu Nguyen, their company Columbia Medical Systems, Inc. ("CMS"), and Sess Merke ("Merke"). The indictment alleged that Tuyet and Phu Nguyen conspired with Merke, Robert Davies ("Davies"), and others to steal and transport medical equipment from their former employer, ATL Philips Medical Systems ("Philips"). The indictment alleged that Nguyen had conspired to sell stolen ultrasound probes.[1] The indictment alleged that the Nguyens resold these stolen probes through their company, CMS, after the probes were given new fake serial numbers. Merke and Davies withdrew from the conspiracy in 2000, but the government alleged that the conspiracy continued until 2003.

_____

[1]An ultrasound probe is the part of the ultrasound machine that comes in contact with the patient's body.

Davies, an unindicted co-conspirator, testified under a grant of immunity that Phu Nguyen, Appellant's husband, asked him to steal probes and sell them to CMS. With the help of Davies, the conspiracy worked its fraud as follows: Davies would tell Philips that a customer had a broken probe that needed replacement, even though the probe was working. Philips would send the new probe to the customer, expecting that the customer would ship the broken probe back. Davies would give Phu Nguyen the customer's old but still functioning probe, and Phu would transfer the functioning probe's serial numbers onto one of the defective probes in the CMS stockroom. Then, Davies would send the defective probe to Philips. So, at Philips's expense, Phu Nguyen and his company, CMS, would end up with functioning probes that were in effect stolen by fraud, and CMS would have given up only defective probes.

The fraudulent conspiracy was also furthered by the deception of others. Co-conspirator Merke stole Philips's inventory from its stockrooms. At trial, Evalyn Thomas ("Thomas"), a Philips data entry clerk who worked for Merke, testified that Merke removed finished probes from the "Finished Goods" inventory without adequate explanation several times. Thomas explained that usually when an employee took material from the Finished Goods stockroom, they would fill out a Material Transfer Form. That form tracked where the material went. Thomas testified that it was unusual for someone in Merke's position to be dealing directly with customers, and it was also odd that Merke personally pulled the stock and completed the entire form himself. According to Thomas, when the Material Transfer Form stated the employee was crediting the taken material to their "wash account," the new material was being taken to replace some old, defective material. Therefore, a Material Transfer Form that took six parts from Finished Goods out of the stockroom and credited the "wash account" should also show the same number of parts going into the "Defective Material" stockroom. Thomas testified that this full accounting of material did not occur on several

of Merke's Material Transfer Forms. Instead, many parts "disappeared," including forty-six ultrasound probes.

Another Philips employee, Dave Westrich ("Westrich"), testified that Nguyen asked him to load some of Philips's proprietary software onto a hard drive for her. Westrich refused and told Nguyen not to call him again. The government contended that Nguyen must have obtained the software another way because Don Davis, a CMS customer, testified that in June 2001, Nguyen approached him with the suggestion that she would give him access to Philip's software if he agreed to guarantee a certain level of business with CMS.

The prosecution introduced CMS business records to show that CMS sold more probes than it purchased for 1999 through 2003. FDA Agent Borden also explained that many Philips probes tied to CMS had false serial numbers. The police seized several probes with false serial numbers when executing a search warrant in December 2003. The testimony tied other probes with false serial numbers to CMS based on its invoices.

The prosecution also presented witnesses who said that having accurate serial numbers on ultrasound probes is important for FDA compliance, as well as for Philips's inventory management. In a contract with CMS, one company included clauses emphasizing that CMS would only sell the company ultrasound components with original serial numbers. Also, a customer testified that he would return a product and refuse to pay for it if he discovered that it did not bear the original serial number.

The government alleged that the Nguyens paid for these stolen probes with cash to hide their origin. FDA Agent Mahoney testified that the Nguyens had made out several checks to cash with the notation "purchase probes Merke" and "purchase probes." These checks were drawn from CMS accounts, and Nguyen signed and negotiated several checks.

The jury heard evidence of Nguyen's statement in which she claimed that she and her husband did not buy any items from Merke, and that Merke had never delivered probes to her. Agent Borden also testified about statements that Merke had made during Merke's interrogation. The government elicited information about that statement on direct examination, and Merke's counsel elicited still more on cross-examination. Agent Borden testified that Merke had stated that he had sold stolen medical equipment to the Nguyens, and that he had received money from the Nguyens, though he refused to estimate how much money.

During closing arguments, Nguyen argued that the evidence did not establish whether she knew the probes were stolen or that the serial numbers had been changed.

On April 5, 2006, the jury found Nguyen guilty of conspiracy to transport stolen property in interstate commerce. The jury convicted her of transportation of stolen property for the shipment of probes on July 25, 2000, and August 15, 2000, but acquitted her of those charges for the shipments occurring on August 10, 2000, and April 3, 2002. The jury found her guilty of introducing misbranded medical devices into interstate commerce for the shipments of probes occurring on July 25, 2000, August 10, 2000, and August 15, 2000, but acquitted her of those charges pertaining to shipments on June 18, 2001, April 3, 2002, and December 3, 2002. The jury acquitted Nguyen of all five counts of holding for sale misbranded medical devices. Finally, the jury convicted her of conspiracy to commit money laundering.

The district court sentenced Nguyen to 48 months incarceration.

## II

## A.

We review claims of a violation of the Confrontation Clause de novo. *United States v. Nielsen*, 371 F.3d 574, 581 (9th Cir. 2004).

The parties dispute whether Nguyen preserved this claim of error. Before trial, Nguyen made several motions in limine and objected to the use of a statement Merke made to Agent Borden, alleging that its admission would violate the Confrontation Clause. Nguyen objected to the admission of any portion of Merke's statement that alluded to her both in the motion in limine and again at trial. The government argues that Nguyen should have objected to Merke's use of his own statement when Merke's counsel sent notice to all parties that Merke would admit his statements. Nguyen argues that she did not object because she understood Merke's alert to mean that Merke would testify, curing any Confrontation Clause problem. Instead, Merke's counsel elicited the statements for which Nguyen had a continuing objection. After opening statements at trial, the district court clarified that Nguyen did not need to make further objection on this issue and that the issue was preserved.[2]

We have held that " 'where the substance of an objection has been thoroughly explored and the trial court's ruling was explicit and definitive, the issue is preserved for appeal.' " *United States v. Varela-Rivera*, 279 F.3d 1174, 1177 (9th Cir. 2002) (quoting *United States v. Palmer*, 3 F.3d 300, 304 (9th Cir. 1993). As we have explained, Nguyen brought the Confrontation Clause issue to the district court's attention twice, and the district court made a definitive ruling and then said she did not need to object further to preserve the issue. Accordingly, if there is Confrontation Clause error, we must apply harmless error review. *Nielsen*, 371 F.3d at 581.

---

[2]The district court stated that Nguyen "[did not] have to object to preserve [the issue]."

The government also argues that we should apply plain error because Nguyen did not move to sever Merke's trial from her own. The key question, however, is whether the issue was "brought to the court's attention." Fed. R. Crim. Pro. 52(b) (plain error standard). Nguyen objected before and during trial, bringing her Confrontation Clause claim to the attention of both the district court and the government. A motion to sever was not necessary to avoid the plain error standard.

## B

We turn to the issue of whether the Confrontation Clause was offended by introduction of the statement made by Merke as related by Agent Borden in her testimony. Agent Borden testified that while at first Merke had said that he received nothing more than lunch money, "he said a lot more things" including that he actually had received other money from the Nguyens, including money "that he had taken as a result of selling equipment to them," but he would not specify the amount. She also testified that "equipment" included probes. The government had previously offered to redact the portion of Merke's statement where he referenced accepting money from the Nguyens for stolen equipment to avoid any Confrontation Clause related errors, but Merke's counsel elicited the testimony anyway.

[1] Our Confrontation Clause analysis does not change because a co-defendant, as opposed to the prosecutor, elicited the hearsay statement. The Confrontation Clause gives the accused the right "to be confronted with witnesses against him." U.S. Const. amend. VI; *Crawford v. Washington*, 541 U.S. 36, 43 (2004). The fact that Nguyen's co-counsel elicited the hearsay has no bearing on her right to confront her accusers. *See also United States v. Mayfield*, 189 F.3d 895, 901 (9th Cir. 1999) (finding reversible error where a co-defendant's counsel elicited hearsay statements in violation of the Confrontation Clause).

[2] Only hearsay statements that are testimonial implicate the Confrontation Clause. *Crawford*, 541 U.S. at 68. While the Court in *Crawford* did not comprehensively define testimonial statements, it stated that statements to a police officer during interrogations qualified. *Id.* at 52. Merke made his statement during Agent Borden's interrogation, and we conclude that it was testimonial.

[3] This testimonial statement was hearsay. The government argues that Merke's statement that he had sold the

Nguyens scrap metal was admitted to show consciousness of guilt. The testimony, however, was broader and Agent Borden testified that Merke had sold the Nguyens medical equipment. This statement does not show Merke's consciousness of guilt, nor is the statement "obviously false." *See, e.g.*, *United States v. Trala*, 386 F.3d 536, 544-45 (3rd Cir. 2004) (holding in a case where the government sought to prove bank robbery, conflicting hearsay statements by a co-defendant regarding the origin of the money were admitted to show consciousness of guilt and were "obviously false"). Merke's statement in which he said that he had received some money from the Nguyens but denied receiving half a million dollars was also not "obviously false." *See id.* The government even acknowledged that this statement raised potential Confrontation Clause problems and offered to redact it.

The government argues that Merke's statement was not inculpatory. But this is not controlling on the existence of error. *Crawford* does not require that a statement inculpate a defendant to trigger error under the Confrontation Clause. Simply, Confrontation Clause error occurs at admission of a testimonial statement without an opportunity to cross-examine. *Crawford*, 541 U.S. at 68-69. If the statement is not inculpatory, that might be probative of the harmlessness of an error, but not of the existence of a Confrontation Clause error.

**[4]** Because Merke's statement was testimonial and admitted for its truth, we hold its admission at Nguyen's trial was error.

## C

**[5]** The prosecution bears the burden of proving the error was harmless beyond a reasonable doubt. *United States v. Gillam*, 167 F.3d 1273, 1277 (9th Cir. 1999) ("Once we find a [Confrontation Clause] error, the prosecution has the burden of showing that the error was harmless beyond a reasonable doubt."); *see also Chapman v. California*, 386 U.S. 18, 24

(1967). "An assessment of harmlessness cannot include consideration of whether the witness' testimony would have been unchanged, or the jury's assessment unaltered, had there been confrontation; such an inquiry would obviously involve pure speculation, and harmlessness must therefore be determined on the basis of the remaining evidence." *Coy v. Iowa*, 487 U.S. 1012, 1021-22 (1988). "Whether an error is harmless depends on a variety of factors, including whether the testimony was cumulative, the presence or absence of corroborating or contradicting the testimony on material points, the extent of cross-examination, and of course, the overall strength of the prosecution's case." *Mayfield*, 189 F.3d at 906 (citation and internal quotations omitted).

The government argues that the error in admitting the hearsay statement was harmless.[3] It contends that the evidence established that Merke had stolen probes from Philips, that both Nguyens had signed checks to Merke, some of which had "purchase probes Merke" on the memo line, that CMS had sold more probes than it had bought, that Phu Nguyen had solicited Davies to steal probes for CMS, that Tuyet Nguyen had solicited Westrich to steal Philips software for CMS, and that Tuyet Nguyen falsely denied doing any business with Merke. The statement that Merke received money from the Nguyens in exchange for medical equipment was the most persuasive evidence that tied Tuyet Nguyen to the stolen probes, and the only testimony that showed her knowledge that the probes were stolen.

---

[3]The government also argues that the limiting instruction that these statements could only be used against Merke cured any error. In *Bruton*, the Court held that a case of the admission of a confession that implicates a co-defendant and where the co-defendant cannot cross examine the confessor was a situation "in which the risk that the jury will not, or cannot, follow instructions is so great . . . that the practical and human limitations of the jury system cannot be ignored." *Bruton v. United States*, 391 U.S. 123, 135 (1968). Therefore, we do not rely on the limiting instruction to cure the error.

**[6]** We cannot say that the government carried its burden of establishing this error was harmless beyond a reasonable doubt. Specifically, the hearsay testimony supported the government's case that Nguyen knew that the probes were stolen. Her knowledge was an element of her convictions for the transportation of stolen property and, therefore, necessary to her conspiracy convictions. Nguyen's closing argument to the jury centered on her contention that she did not know the probes were stolen. While the jury could have concluded that she knew the probes were stolen absent the hearsay testimony, the government has not proven that the jury would have so concluded beyond a reasonable doubt. We reverse and remand Nguyen's convictions for conspiracy to transport stolen property, conspiracy to commit money laundering, and the transportation of stolen property because Nguyen was not able to cross-examine Merke about his statement. This Confrontation Clause error does not affect her convictions for introducing a misbranded medical device into interstate commerce.[4]

## III

### A.

We next address the conviction for felony misbranding of medical devices. The problem before us here is that the jury instruction that defined felony misbranding of medical devices did not include a materiality element. Nguyen did not

---

[4]Merke's statements do not affect the jury's verdict that Nguyen introduced misbranded medical devices into interstate commerce. For the jury to find that Nguyen committed this crime, it must find: that Nguyen (1) introduced (2) a medical device that is (3) materially adulterated or misbranded, and (4) that she acted with intent to defraud or mislead. 21 U.S.C. § 331(a); *see also United States v. Watkins*, 278 F.3d 961, 964 (9th Cir. 2002). Nguyen did not need to know the probes had been stolen to commit this crime, only that their serial numbers had been altered. The hearsay statements do not discuss the probes' serial numbers.

object to the instruction and argues that we should apply plain error review.

The government to the contrary argues waiver and relies upon the invited error doctrine, which in an appropriate case allows us to decline to review instructions where a defendant invited the error and relinquished a known right. *See United States v. Perez*, 116 F.3d 840, 845 (9th Cir. 1997). As the court in *Perez* stated, "[f]orfeited rights are reviewable for plain error, while waived rights are not." *Id.* (citation omitted). Waiver occurs where a defendant "considered the controlling law, or omitted element, and, in spite of being aware of the applicable law, proposed or accepted a flawed instruction." *Id.*

Nguyen proposed another instruction, Instruction 30, and the government contends that this instruction shows that she knew that materiality was an element of felony misbranding. Instruction 30, however, only states that any omission must be material, it does not say that an affirmative statement need be material. Therefore, it is not clear that Nguyen considered the controlling law and accepted the flawed instruction. We conclude that the waiver argument should be rejected and instead we accept Nguyen's argument that we should review the jury instruction on felony misbranding of medical devices for plain error.

**B**

To prevail on plain error review, Nguyen must show (1) that the proceedings below involved error, (2) that the error is plain, and (3) that the error affected the substantial rights of the aggrieved party. *See United States v. Olano*, 507 U.S. 725, 732-35 (1993). In addition, a defendant must also show that the error " 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings' before we will exercise our discretion pursuant to Rule 52(b) to correct the plain error." *United States v. Alferahin*, 433 F.3d 1148, 1154 (9th

Cir. 2006) (en banc) (citing *Olano*, 507 U.S. at 736); *see also United States v. Hai Waknine*, 543 F.3d 546, 551 (2008).

**[7]** Materiality indisputably is an element of felony misbranding of medical devices. *United States v. Watkins*, 278 F.3d 961, 969 (9th Cir. 2002). It is thus somewhat surprising that the government's proposed instructions did not include this element. The government concedes that Instruction 22 did not include that element but argues that this omission was cured by Instruction 30. That instruction stated:

> If any article is alleged to be misbranded because the labeling or advertising is misleading, then in determining whether the labeling or advertising is misleading there shall be taken into account (among other things) not only representations made or suggested by statement, word, design, device, or any combination thereof, but also the extent to which the labeling or advertising fails to reveal facts material in the light of such representations or material with respect to consequences which may result from the use of the article to which the labeling or advertising relates under the conditions of use prescribed in the labeling or advertising thereof or under such conditions of use as are customary or usual.

This instruction does not cure the lack of materiality element. It states that the article could be misbranded because of a misstatement or a failure to state something that is material. Therefore, we hold the government's argument is unavailing and that there was error. The instructions did not include the materiality element, this was an error and it is as simple as that.

**C**

It remains to be determined whether this error requires relief under the plain error standard. We believe that the first

element of that standard is met. An error is plain when it is "clear" or "obvious" under the law. *Olano*, 507 U.S. at 734. We have held that "a district court's error is plain when its jury instructions fail to incorporate an element that has been clearly established by Ninth Circuit precedent." *Alferahin*, 433 F.3d at 1157 (citation omitted). We hold that disregard of the materiality element for felony misbranding of medical devices is a plain error.

[8] We turn next to the third element of the plain error standard, whether substantial rights are affected, and it is here that Nguyen's appeal falters. "[T]he omission of an element from jury instructions does not always 'affect' a defendant's substantial rights." *Id.* (citing *United States v. Neder*, 527 U.S. 1, 15 (1999)). Nguyen's closing statement to the jury did not argue that the changed serial numbers were immaterial—it focused on the point that the numbers may have been changed by someone else and that Nguyen may have not known about it. Moreover, the government presented plenty of evidence to support a finding of materiality. Two customers testified that they would not buy ultrasound probes without original serial numbers. One of CMS's customers included a clause in its contract stating that all probes would have original serial numbers. The testimony also demonstrated that the probes' original serial numbers were critical for FDA compliance and in the event of a recall. Thus, there was overwhelming evidence of the materiality of the altered serial numbers and very little evidence that these changes were unimportant.[5]

---

[5]Nguyen argues that there was conflicting and slim evidence regarding serial numbers' materiality. She states that there has never been a recall of ultrasound probes and that some evidence demonstrated that serial numbers were not unique to individual probes. She argues that serial numbers were for inventory control above anything else. But it is a sufficient answer that a recall could have occurred, and the serial numbers, whether unique or not, would have aided customers in identifying whether their probes were recalled.

**[9]** Because of the strong evidence on materiality and because Nguyen did not contest materiality of altered serial numbers in her presentations to the jury, we hold that this error did not affect Nguyen's substantial rights.

## IV

**[10]** For the forgoing reasons, we conclude that Nguyen's Confrontation Clause rights were violated and we REVERSE her convictions for conspiracy to transport stolen property, the transportation of stolen property, and conspiracy to commit money laundering. Her remaining convictions for felony misbranding of medical devices are AFFIRMED. We REMAND for retrial, if the government wishes to pursue the charges that we reverse, and for resentencing.

REVERSED IN PART, AFFIRMED IN PART, and REMANDED.

---

CALLAHAN, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority that Tuyet Nguyen ("Nguyen") adequately preserved in the district court her claim that the admission of the statement by Sess Merke to Agent Borden violated the Confrontation Clause. I also agree that the admission of Merke's statement offended the Confrontation Clause. I disagree, however, with the majority's conclusion that this error was not harmless beyond a reasonable doubt. For this reason, I dissent in part from the majority's opinion and would affirm Nguyen's convictions for conspiracy to transport stolen property, conspiracy to commit money laundering, and transportation of stolen property.[1]

---

[1]I agree with the majority's conclusion that Nguyen's conviction for felony misbranding of medical devices should not be disturbed. Maj. Op. 5878-82.

## I.

Confrontation Clause errors are subject to harmless error review. *United States v. Schoneberg*, 396 F.3d 1036, 1044 (9th Cir. 2005). "[A]n otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986). To assess the harmlessness of an error, we inquire "whether, assuming that the damaging potential of the cross-examination were fully realized," we "might none-theless say that the error was harmless beyond a reasonable doubt." *Id*. at 684. Harmlessness is determined on the basis of the remaining evidence, *Coy v. Iowa*, 487 U.S. 1012, 1022 (1988), and we consider a number of factors including "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testi-mony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." *Van Arsdall*, 475 U.S. at 684.

The majority initially asserts that "the most persuasive evi-dence that tied Tuyet Nguyen to the stolen probes, and the only testimony that showed her knowledge that the probes were stolen" was Merke's statement, as related by Agent Bor-den, that Merke received money from the Nguyens in exchange for medical equipment.[2] Maj. Op. at 5877. The

---

[2] The panel majority and I have a difference of opinion regarding the persuasiveness of the evidence in the record. Although the majority finds Merke's hearsay statement to be the most persuasive evidence in the record, other evidence in the record, including significant circumstantial evidence, establishes the harmlessness of the Confrontation Clause error. The government is not required to prove knowledge by direct evidence, and may rely on circumstantial evidence. *See United States v. Santos*, 128 S. Ct. 2020, 2029 (2008) (plurality) (stating that knowledge "must almost

majority's subsequent discussion is more nuanced and determines that, absent the hearsay testimony, the government has not proven that the jury would have concluded beyond a reasonable doubt that Nguyen knew the probes were stolen.[3] *Id.* at 5878.

I respectfully disagree. Based on all of the remaining evidence in the record, I conclude that any reasonable jury would have connected Nguyen to the stolen probes and determined that Nguyen knew the probes were stolen, even without Merke's hearsay statement. The record demonstrates that Merke stole the probes, sold and transferred them to Nguyen and her company, Columbia Medical Systems, Inc. ("CMS"), and that Nguyen then sold the probes in interstate commerce.

Evidence in the record indicates that Merke stole functional probes from Philips and sold them to CMS and Nguyen. Documentary evidence and the testimony of Evalyn Thomas, a Philips data entry clerk, establish that equipment, including forty-six ultrasound probes, "disappeared" and could not be accounted for while Merke was in charge of Philips's Defective Materials storeroom and Finished Goods storeroom. *See* Maj. Op. at 5871-72. Also, documentary evidence in the form

---

always" be proven by circumstantial evidence); *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003) ("[W]e have never questioned the sufficiency of circumstantial evidence in support of a criminal conviction, even though proof beyond a reasonable doubt is required."); *United States v. Wright*, 215 F.3d 1020, 1028 (9th Cir. 2000) (stating that the government need not prove defendant's knowledge of the objective of a conspiracy with direct evidence, and that inferences based on circumstantial evidence would sustain the conspiracy conviction); *cf. United States v. Santos*, 527 F.3d 1003, 1009 (9th Cir. 2008) ("The government is not required to produce direct evidence of the defendant's intent; rather, it may provide circumstantial evidence from which the district court can draw reasonable inferences.").

[3]An element of the crime of interstate transportation of stolen goods under 18 U.S.C. § 2314 is knowledge of the stolen nature of the transported goods.

of shipping-related documents indicates that Merke repeatedly shipped packages to CMS and/or Tuyet Nguyen. The record contains numerous shipping invoices, logs, and waybills that connect Merke to Nguyen and CMS.

Furthermore, the government presented evidence of CMS's practice of using checks made payable to "Cash" to purchase probes and other ultrasound equipment, and testimony that this was an unusual practice in the industry given that it signaled potential illegal conduct. Of these checks payable to "Cash" on CMS's account, 112 of them, totaling roughly $512,000, include a notation "Purchase probes (Merke)" or some similar descriptor. Tuyet Nguyen signed forty-nine of these 112 checks.[4] This evidence overwhelmingly links Nguyen to the probes, and to Merke. The evidence of the checks payable to "Cash" and referencing both probes and Merke also directly contradicts Nguyen's statement during a police interview that she had never purchased or taken delivery of any items, including probes, from Merke.

The government also produced evidence that CMS sold many more ultrasound probes than it recorded as purchased. For example, a comparison of CMS's purchase and sales reports for specific, relevant equipment models indicates that for the year 1999, CMS purchased nine items and sold sixty items. For the year 2000, there were seven purchases and eighty-three sales. In 2001, there were four purchases and forty sales. In 2002, CMS purchased thirty-three items and sold fifty-four items. In 2003, there were no purchases, yet fifty-eight sales.[5]

---

[4]Altogether, the record contains evidence of over one million dollars worth of checks payable to "Cash" and cashier's checks, all of which were drawn on CMS's accounts and bore some notation related to the purchase of equipment.

[5]The illegality of the operation is supported by the testimony of FDA Agent Borden that, based on a comparison of physical evidence obtained during the execution of a search warrant and documentary evidence from CMS, many Philips probes tied to CMS had false serial numbers.

In addition, the government produced evidence of the Nguyens' other attempts to facilitate their criminal scheme. First, as the majority notes, Phu Nguyen, Tuyet Nguyen's husband and business partner in CMS, solicited Robert Davies, a Philips employee, to steal ultrasound probes for CMS. *See* Maj. Op. at 5870-71. Second, Tuyet Nguyen solicited Dave Westrich, her former colleague from Philips, to steal Philips's proprietary software for her or CMS's use.

Based on the entire record, I conclude that the Confrontation Clause error was harmless beyond a reasonable doubt. As the Supreme Court recognized in *Santos*, knowledge "must almost always" be proven by circumstantial evidence. 128 S. Ct. at 2029. It is unlikely that the government would have ever been able to get Nguyen to confess outright that she knew the probes were stolen. But such a confession was not required to convict Nguyen. The jury could, and I believe would, draw inferences from the evidence presented to establish the connection between Nguyen and the probes, and to establish Nguyen's knowledge of the stolen nature of the probes that CMS had acquired and sold. Accordingly, I would find that the Confrontation Clause error here was harmless beyond a reasonable doubt.

## II.

Because I would affirm the jury's verdict in its entirety, I proceed to address Nguyen's remaining substantive challenges on appeal.[6] These challenges to her money laundering conspiracy conviction, which she did not raise in the district court, are subject to plain error review. "Under plain-error review, reversal is permitted only when there is (1) error that

---

[6]The majority opinion does not address these remaining issues, which relate to Nguyen's conviction for conspiracy to launder money, because its reversal on the Confrontation Clause issue obviates the need to do so. Nonetheless, as the issues have been briefed and argued, an evaluation of their merits may assist the district court should the matter be retried.

is (2) plain, (3) affects substantial rights, and (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Cruz*, 554 F.3d 840, 845 (9th Cir. 2009) (citations and internal quotations omitted). "An error is plain if it is 'contrary to the law at the time of appeal . . . .' " *United States v. Mejia*, 559 F.3d 1113, 1115 (9th Cir. 2009) (quoting *Johnson v. United States*, 520 U.S. 461, 468 (1997)). To be plain, the error must be "clear-cut" or "obvious." *See United States v. Zalapa*, 509 F.3d 1060, 1064 (9th Cir. 2007).)

**A.**

On appeal, Nguyen contends that the district court improperly instructed the jury with respect to the charge of conspiracy to launder money in violation of 18 U.S.C. §§ 1956(a)(1)(A), 1956(a)(1)(B), and 1956(h). She argues that although the district court's instruction containing the elements of the money laundering conspiracy offense, Instruction 20, correctly stated that it is a specific intent crime, the district court committed reversible error by providing a subsequent instruction regarding knowledge, Instruction 25. Instruction 25 allegedly "eviscerated" the specific intent element stated in Instruction 20. Instruction 20 states, in relevant part, that the government must prove that:

> (2) the defendant knew that the property represented the proceeds of interstate transportation of stolen property; and

> (3) the defendant knew the transaction was designed in whole or in part to conceal or disguise the nature, source, ownership, or control of the proceeds of interstate transportation of stolen medical devices, or the defendant acted with the intent to promote the carrying on of interstate transportation of stolen medical devices . . . .

Instruction 25, however, states: "An act is done knowingly if the defendant is aware of the act and does not act through ignorance, mistake, or accident. You may consider evidence of the defendant's words, acts, or omissions, along with all the other evidence, in deciding whether the defendant acted knowingly." Thus, Nguyen asserts that Instruction 25 negated the specific intent requirement by allowing the jury to determine that she acted "knowingly" through "ignorance, mistake or accident."

Nguyen's claim of error is based on our decision in *United States v. Stein*, where we held that a jury instruction on general knowledge that followed a correct money laundering instruction rendered the instructions, as a whole, erroneous because they effectively omitted an element of the offense. *See* 37 F.3d 1407, 1410 (9th. Cir. 1994). However, unlike Instruction 25 in this case, the general knowledge instruction in *Stein* contained a second sentence, which rendered the *Stein* instructions problematic. There, the general knowledge instruction stated that "an act is done knowingly if the defendant is aware of the act and doesn't act through ignorance, mistake or accident. *The Government is not required to prove that the defendant knew his act or omissions were unlawful*." *Id.* at 1410 (emphasis added). The second sentence was the basis of the *Stein* court's conclusion that the jury could have convicted Stein without finding he knew the predicate acts were unlawful. *Id*. Because Instruction 25 does not contain the language that provided the taint in *Stein*, there was no error. Moreover, even if there was some error, it was not plain error; any possible error was not "so clear-cut, so obvious, a competent district judge should be able to avoid it without benefit of objection." *Zalapa*, 509 F.3d at 1064 (citation and quotation marks omitted). Accordingly, I would find no instructional error.

## B.

Nguyen belatedly challenges the sufficiency of evidence supporting her conviction for conspiracy to launder money, relying on the United States Supreme Court's recent decision in *United States v. Santos*, 128 S. Ct. 2020 (2008) (plurality).[7] Although the panel majority does not reach this issue, I conclude that the error alleged by Nguyen was not plain error.

In *Santos*, the Court considered "whether the term 'proceeds' used in the federal money-laundering statute, 18 U.S.C. § 1956(a)(1), means 'receipts' or 'profits.' " 128 S. Ct. at 2022. *Santos* involved the operation of a criminal lottery, and Santos was convicted of money laundering based on his payments of money to lottery winners and employees. *See id.* at 2022-23. Four Justices found that the term "proceeds" was ambiguous and, applying the rule of lenity, concluded that the term "proceeds" in 18 U.S.C. § 1956(a)(1) universally means "profits," and not "gross receipts." *See id.* at 2023-25. Under the plurality's view, "to establish the proceeds element under the 'profits' interpretation, the prosecution needs to show . . . that a single instance of specified unlawful activity was profitable and gave rise to the money involved in a charged transaction." *Id.* at 2029.

However, Justice Stevens, whose separate concurrence provided the fifth vote in *Santos*, took the narrower view that Congress could have intended the term "proceeds" to have different meanings in different contexts and, as a result, "proceeds" might mean "profits" in the illegal lottery context, but might not have that meaning in the context of another predi-

---

[7]Nguyen waited until November 24, 2008, just prior to oral argument, to raise this argument. Although the Supreme Court decided *Santos* on June 2, 2008, Nguyen did not raise the *Santos* issue in her reply brief, which was filed on August 5, 2008. Nonetheless, no authority appears to preclude consideration of this issue in light of the intervening decision by the Supreme Court.

cate crime. *Id.* at 2031-32 (Stevens, J., concurring) ("[T]his Court need not pick a single definition of 'proceeds' applicable to every unlawful activity, no matter how incongruous some applications may be."). Thus, Justice Stevens, agreeing with the analysis of four dissenting Justices, stated that "the legislative history of § 1956 makes it clear that Congress intended the term 'proceeds' to include gross revenues from the sale of contraband and the operation of organized crime syndicates involving such sales." *Id.* at 2032; *see also id.* at 2035 & n.1 (Alito, J., dissenting). Although Justice Stevens and the plurality contest the *stare decisis* effect of his opinion, the plurality recognizes that Justice Stevens's narrower concurrence limits the Court's holding. *Compare id.* at 2031, *with id.* at 2034 n.7.

Based on the plurality's opinion in *Santos*, Nguyen argues that the record does not support her conviction for conspiracy to launder money because it does not contain evidence demonstrating that she used profits to further or conceal the conspiracy.

Two aspects of the *Santos* decision indicate that any alleged error in this case is not so clear-cut or obvious as to render it "plain error." First, the multiple opinions in *Santos* do not conclusively define "proceeds." Justice Stevens's concurring opinion suggests that "proceeds" does not mean "profits" in the context of the sale of contraband and the operation of a criminal organization, which is at issue here. Moreover, his view is consistent with the views of four dissenting Justices. Thus, the district court's definition of "proceeds," if error, cannot be considered plain error. *See United States v. Fernandez*, 559 F.3d 303, 316 (5th Cir. 2009) ("While Justice Stevens and the plurality disagreed over the precise precedential effect of his statement, the uncertainty renders any error here not 'plain.' "); *accord United States v. Brown*, 553 F.3d 768, 785 (5th Cir. 2008); *see also* Ninth Circuit Model Jury Instruction 8.120 Financial Transaction to Promote Unlawful Activity, Comment (Mar. 2009) ("Whether the instruction

must now be modified in all or some other cases to define 'proceeds' to mean 'profits' pursuant to *Santos* is unclear.").

Second, neither the *Santos* plurality or Justice Stevens's concurring opinion addressed the quantum of evidence required to support a conviction for the charge of *conspiracy* to launder money, which is at issue here, as opposed to a conviction for money laundering. *See Santos*, 128 S. Ct. at 2023 n.1. The plurality specifically stated that it was not addressing the possibility that the convictions for conspiracy to launder money at issue there would stand in light of its holding regarding the meaning of "proceeds." *Id.*

Accordingly, despite the Supreme Court's opinion in *Santos*, the definition of proceeds under which Nguyen was convicted, if erroneous, was not plain error.

\* \* \*

Based on the foregoing, I respectfully dissent in part. I would find that the violation of the Confrontation Clause was harmless error, and that Nguyen's conviction for conspiracy to launder money did not involve plain error. Nguyen's convictions should be affirmed in their entirety.