**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 10-50607 |
| Plaintiff - Appellee, | D.C. No. 3:10-cr-02969-JM-1 |
| v. | |
| BAO Q. TRUONG, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Southern District of California
Jeffrey T. Miller, Senior District Judge, Presiding

Argued and Submitted November 7, 2011
Pasadena, California

Before: SCHROEDER and LEAVY, Circuit Judges, and GILLMOR, Senior
District Judge.[**]

Bao Truong ("Truong") appeals his jury conviction of three counts of mail

theft by a postal employee in violation of 18 U.S.C. § 1709. The prosecution arose

_____

[*]    This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

[**]    The Honorable Helen W. Gillmor, Senior United States District Judge
for the District of Hawaii, sitting by designation.

out of an investigation of the theft of three gift cards mailed by a woman in Kentucky to her son in San Diego, California, but which never reached their destination. The cards were traced to Truong as a result of their having been addressed to an address on Truong's mail delivery route, and then cashed by Truong's wife. The sufficiency of the evidence establishing theft is not disputed.

Truong's principal argument on appeal is that the district court erred by admitting a statement of the investigating agent concerning a credit card industry practice. At trial, Agent Figueroa's testimony described how he traced the cards cashed by Truong's wife to the cards mailed in Kentucky, and further, how he tested Truong by planting items, appearing to be mail containing something of value, in the mail handled by Truong. Agent Figueroa further explained that Truong failed to deliver one of the test items, but instead took the test piece home, where he was arrested, and where agents discovered in his vehicle not only the test piece, but another piece of mail that did not belong to Truong.

To show that the cards purchased in Kentucky were the same as those cashed, Agent Figueroa explained that he obtained a document, which was admitted into evidence as Exhibit 8, showing that the "proxy number" on the purchaser's receipt corresponded to the card having a slightly different "card number" on the receipt where the card was cashed. Agent Figueroa obtained the

2

document from the credit card company to illustrate that the two sets of numbers represented the same card.

Although not in response to any specific question, Agent Figueroa added that it is standard credit card industry practice to scramble the last four digits of a gift card in order to deter fraud. Truong's objection to that statement was overruled by the district court. This was error because Agent Figueroa had no first-hand knowledge of the credit card industry practice. The document, however, was admitted into evidence without objection. Truong now also contends that Agent Figueroa was not qualified to make such a statement as an expert, but Truong failed to object to Agent Figueroa's expert qualifications. *See United States v. Gomez-Norena*, 908 F.2d 497, 500 (9th Cir. 1990) (we review for plain error where the appellant failed to raise the evidentiary objection below).

Although Agent Figueroa's testimony concerning the credit card industry practice was erroneously admitted, it added nothing material to the prosecution's case and was not relied on by the prosecution for any purpose during opening or closing argument; it was not further alluded to at trial. The error, therefore, was harmless. *See United States v. Tuyet Thi-Bach Nguyen*, 565 F.3d 668, 673–74 (9th Cir. 2009) (applying harmless error review to determine whether a claimed confrontation clause error was harmless beyond a reasonable doubt); *United States*

3

*v. McClintock*, 748 F.2d 1278, 1291 & n.9 (9th Cir. 1984) (holding improperly admitted expert testimony harmless because there was substantial admissible evidence).

Truong additionally challenges the reasonable doubt instruction, which was the Ninth Circuit model jury instruction. Considering all of the instructions given in this case as a whole, the instructions correctly conveyed the concept of reasonable doubt to the jury. *See Victor v. Nebraska*, 511 U.S. 1, 5–6 (1994) (reasoning that the test is whether the jury instructions, taken as a whole, "correctly convey the concept of reasonable doubt to the jury" (citation omitted)). We have reached the same result by relying on the same well-established principle in *United States v. Anyanwu*, No. 10-10321, 2011 WL 3915613, at *1 (9th Cir. Sept. 7, 2011), *United States v. Ferguson*, 425 F. App'x 649, 651 (9th Cir. Apr. 5, 2011), and *United States v. Cano-Medina*, No. 10-50406, 2011 WL 4842509, at *1 (9th Cir. Oct 13, 2011). We decline to exercise our supervisory powers to discourage use of this instruction in the future. *See United States v. Rubio-Villareal*, 967 F.2d 294, 297 (9th Cir. 1992) (en banc) (explaining that exercise of this court's supervisory powers to prohibit or limit the use of an otherwise constitutional instruction is only proper when the instruction is defective, confusing, intrusive, or useless).

4

**AFFIRMED**.

*United States v. Truong*, No. 10-50607

LEAVY, Circuit Judge, concurring in part, dissenting in part:

I concur with the majority's conclusion regarding the reasonable doubt jury instruction. I respectfully dissent as to the majority's conclusion that the confrontation clause error was harmless beyond a reasonable doubt.

In order to convict Truong of Count 1 of the indictment, the government had to establish that the gift cards purchased by Mrs. Mackey at Kroger in Kentucky were the same gift cards cashed in San Diego at GameStop by Truong's wife. The government offered Exhibit 1, a purchase receipt from Kroger in Kentucky, showing Mrs. Mackey's purchase of three gift cards, with numbers ending in the last four digits of 6930, 0034, and 5804. The government also offered Exhibit 3, a purchase receipt from GameStop in San Diego, showing three gift cards were redeemed by Truong's wife, with numbers different from those used in Kentucky, ending in the last four digits of 3937, 5803, and 4034.

The government offered Exhibit 8B, showing two columns (reproduced below), listing "proxy number" and "card number." Nothing in the exhibits explains the relationship between the completely different numbers, or what the words "proxy number" or "card number" signify.

| Proxy Number | Card Number |
|---|---|
| 9027253715804 | 4416991058625803 |
| 7971739506930 | 4416692039273937 |
| 7981745480034 | 4416692039274034 |

The government's key witness was Special Agent Figueroa of the Office of Inspector General of the U.S. Postal Service. He led both the investigation and the arrest of Truong. On direct examination, he testified about the card numbers as follows:

Figueroa: Metabank provided a set of information regarding the numbers that were in Mrs. Mackey's receipt.

Government: And from that information did you determine that you needed to serve another subpoena?

Figueroa: Yes.

Government: Okay. How did you determine that?

Figueroa: Well, it was part of the information provided by Metabank, but also what happens is that in that particular industry - -

Defense: Objection, your Honor; calls for speculation.

The Court: The objection is overruled.

Figueroa: In that particular industry, for security reasons, when a prepaid card is activated - -

Defense: Objection, your Honor; hearsay, confrontation, lack of foundation personal knowledge.

The Court: The objection is overruled on each ground. You may continue, sir.

Figueroa: When a prepaid card is purchase [sic] and activated, for security reasons that number is scrambled or - - to defect fraud - - to deter fraud.

(ER 54-55).

On cross examination, when asked about Exhibit 1 (the Kroger receipt) and Exhibit 3 (the GameStop receipt), Figueroa testified as follows:

Defense: So the only information that you know about the relationship between these two sets of numbers is from what someone told you - -

Figueroa: Correct, via a subpoena.

Defense: And you yourself have no firsthand knowledge of that relationship?

Figueroa: No.

(ER 132).

The majority agrees that the district court erred in allowing Figueroa's testimony regarding the "scrambling" of numbers. Figueroa admitted that he had no firsthand knowledge of the relationship between the two sets of numbers, and that he relied upon information that someone told him.

Admission of an unavailable witness's hearsay statement violates the Confrontation Clause of the Sixth Amendment when it is testimonial and there has

3

been no opportunity to cross-examine. *See Crawford v. Washington*, 541 U.S. 36, 68 (2004). Here, Figueroa's testimony about what someone else told him about the proxy numbers is hearsay admitted in violation of the Confrontation Clause.

Confrontation Clause violations are subject to constitutional harmless error review. *United States v. Bowman*, 215 F.3d 951, 961 (9th Cir. 2000) ("Evidence erroneously admitted in violation of the Confrontation Clause must be shown harmless beyond a reasonable doubt, with courts considering the importance of the evidence, whether the evidence was cumulative, the presence of corroborating evidence, and the overall strength of the prosecution's case."). The majority concludes that admission of Figueroa's testimony was harmless because "it added nothing material to the prosecution's case." The government contends the admission was harmless because Exhibit 8B, labeling one set of numbers as "proxy" numbers, informs the jury that those numbers are a "substitute" for the gift card numbers, and a gift card has two different numbers.

In my view, the error is not harmless beyond a reasonable doubt. The fact that the numbers recording the purchase in Kentucky are wholly different from the numbers recording the redemption in San Diego is powerful evidence that the cards are not the same - until the jury is unconstitutionally told that when a prepaid gift card is purchased and activated, that gift card number is scrambled for security

4

reasons to deter fraud. In other words, without Figueroa's hearsay explanation, no correlation exists between the three "proxy" numbers and the three "card numbers." Figueroa's hearsay testimony is the only evidence establishing this connection.

This connection between the two different numbers was integral to Figueroa's investigation, and central to the prosecution's case as to Count 1. Without other non-hearsay evidence connecting the purchase and redemption numbers, the evidence establishing Truong's guilt as to Count 1 is nonexistent, except for the circumstantial evidence that three gift cards were purchased in Kentucky, in the common denominations of $100, $100, and $50, were mailed but not received, and, within a week's time, three gift cards of the same denominations were used by Truong's wife. This circumstantial evidence becomes persuasive only in conjunction with Figueroa's hearsay testimony that the purchase and redemption numbers were connected, as told to Figueroa by a non-testifying party.

The other evidence of Truong's guilt on the remaining two counts was inconclusive, consisting only of two letters in Truong's mailbag in his car. The error as to Count 1 created the obvious risk that the jury would infer Truong's intent to steal the two letters in his mailbag. In the absence of a conviction on Count 1, the jury could have found that the two letters in Truong's mailbag would

5

have been taken back to the Post Office for correct delivery. In sum, the Confrontation Clause error in this case was not harmless beyond a reasonable doubt.

I would vacate the judgment and remand.