WARDLAW, Circuit Judge,
concurring in part and dissenting in part:
I agree with the majority that the district court violated Macias’s Confrontation Clause rights by admitting the Amended Delayed Birth Registration, which contained the Border Patrol agents’ testimonial statements that Macias was born in Mexico. The majority also correctly holds that the district court’s admission of the document where the government failed to call the two attesting Border Patrol agents to testify at Macias’s trial was error. However, the majority incorrectly reviews this error under the plain error standard, concluding that although the error was “plain,” it did not affect Macias’s substantial rights. The majority disregards the well-established principle that we “review de novo whether the admission of a document violated a defendant’s Confrontation Clause rights.” United States v. Bustamante, 687 F.3d 190, 1193 (9th Cir.2012). Under that standard, “[t]he government bears the burden-of proving that a Confrontation Clause error is harmless beyond a reasonable doubt.” Id. at 1195. The government cannot meet that burden here.
A.
Macias’s opening brief argues that the standard of review of the Confrontation Clause error is “de novo” review. The government’s answering brief agrees: It states that “[t]his court reviews ‘[t]he district court’s resolution of Confrontation Clause claims’ de novo,” citing United States v. Berry, 683 F.3d 1015, 1020 (9th Cir.2012) (“The district court’s resolution of Confrontation Clause claims is reviewed de novo.”). The government further agrees that it bears the burden of proving that the error was harmless beyond a reasonable doubt, citing United States v. Tuyet Thi-Bach Nguyen, 565 F.3d 668, 675 (9th Cir.2009) (“The prosecution bears the burden of proving the error was harmless beyond a reasonable doubt.”). The answering brief then addresses the merits of Macias’s Confrontation Clause claim for the next five pages.
This is classic “waiver of waiver.” Where the government elects to address an unpreserved claim on the merits rather than to argue that the defendant waived the claim by failing to object on that basis in the trial court, it is deemed to waive the waiver. In United States v. Doe, 53 F.3d 1081 (9th Cir.1995), for example, the government, as here, failed to argue waiver in its briefs or at oral argument, but instead urged us to reach the merits of the claim. We concluded that the “government ha[d] ‘waived’ any waiver argument it may have had.” Id. at 1083. Citing Oklahoma City v. Tuttle, 471 U.S. 808, 815-16, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985), we reasoned *1025 that “[wjaiver does not divest the Court of jurisdiction it otherwise enjoys.” Rather, “[wjaiver is a creature of judicial policy, informed in this purely federal context by concerns of fairness, finality, and economy.” Id. at 1082. Similarly, in Norwood v. Vance, 591 F.3d 1062 (9th Cir.2010), the plaintiff did not argue waiver, in the sense of failing to preserve an objection, but addressed the question of qualified immu-nity on the merits. We held that “[i]t is well-established that a party can waive waiver implicitly by failing to assert it,” and that the plaintiff “waived the defendants’ waiver by addressing the claim on the merits without also making a waiver argument.” Id. at 1068 (internal quotation marks omitted); see also Graham-Sult v. Clainos, 756 F.3d 724, 747 n. 16 (9th Cir.2014) (“[Defendants] did not raise [a defense] in their motions or replies in the district court. However, Plaintiffs have not argued that [Defendants] waived this argument, and have therefore waived the opportunity to object on that ground.”); United States v. Garcia-Lopez, 309 F.3d 1121, 1123 (9th Cir.2002) (“[T]he government can ‘waive waiver’ implicitly by failing to assert it[.]”); United States v. Schlesinger, 49 F.3d 483, 485 (9th Cir.1994) (“This court will not address waiver if not raised by the opposing party.”); United States v. Lewis, 787 F.2d 1318, 1323 n. 6 (9th Cir.) amended by 798 F.2d 1250 (9th Cir.1986) (refusing to address the government’s waiver argument, raised for the first time in its petition for rehearing, because the government had failed to argue waiver in its briefs or at oral argument).
Given that the government elected to argue the Confrontation Clause issue on the merits, and the novel and fairly egregious circumstances by which the inadmissible evidence was created, we not only can, but should, address the Confrontation Clause claim on its merits.[1] The Confrontation Clause is a “bedrock procedural guarantee,” Crawford v. Washington, 541 U.S. 36, 42, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), which courts should make every effort to preserve.[2]
*1026 The government admits it created the Amended Delayed Birth Registration to bolster its case against Macias. At Macias’s first trial on these charges, the court admitted Macias’s Delayed Birth Registration. A Border Patrol agent, Joel Mata, Jr., testified that he had attempted to “cancel” Macias’s Delayed Birth Registration by stamping the word “Canceled” on a copy of it and submitting it to the California Department of Vital Records (the “Vital Records Department”).[3] The government then called a representative from the Vital Records Department, which had rejected the purported “cancellation,” who explained that the Delayed Birth Registration could be changed only by amendment. The first jury hung and the court declared a mistrial. The prosecution then spoke to several jurors who revealed that the two jurors responsible for hanging the. jury believed that the government should have followed the procedures outlined by the Vital Records Department’s representative; that is, that the government should have sought an amendment to Macias’s Delayed Birth Registration.
Before the second trial, at the prosecutor’s direction, two other Border Patrol' agents, whom the government did not call to testify at the second trial, Brian Desro-siers and Andrew Kahl, generated the Amended Delayed Birth Registration by submitting an affidavit attesting that Macias was born in Mexico, not Riverside.[4] The affidavit listed evidence the prosecution planned to (and did) introduce at the second trial as the “reason for correction” or “amendment” of the Delayed Birth Registration. Thus, the government fabricated the very evidence — the .Amended Delayed Birth Registration — it thought it would need to secure Macias’s conviction the second time around.
B.
The government argues that it was not a violation of Macias’s Confrontation Clause rights to admit the Amended Delayed Birth Registration on several bases, none of which is availing.[5] First, the government argues that there was no Confrontation Clause violation because the Amended Delayed Birth Registration, once filed, became part of Macias’s Delayed Birth Registration. Citing Crawford, the government agrees that testimonial evidence may not be presented at trial unless the defendant has the opportunity to cross-examine the witness. See 541 U.S. at 59, 124 S.Ct. 1354 (“Testimonial statements of *1027 witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine.”)- The government, however, argues that the Amended Delayed Birth Registration is non-testimonial. Relying on our decision in United States v. Bahena-Cardenas, 411 F.3d 1067 (9th Cir.2005), for the proposition that birth certificates are non-testimonial, see id. at 1075 (holding that a “warrant of deportation is no different than a birth certificate or any other public record which constitutes the routine cataloguing of an unambiguous factual matter”), the government asserts that the Amended Delayed Birth Registration is part of Macias’s birth record and that it is, for that reason, non-testimonial.
The government’s position is formalistic: it hinges on the label “birth certificate,” without analyzing whether the relevant statements were made under circumstances in which an objective witness would be reasonably led to believe that they would be used in future litigation. See Melendez-Diaz v. Massachusetts, 557 U.S. 305, 309-10, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009) (one formulation of “the class of testimonial statements covered by the Confrontation Clause” is “ ‘statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.’ ” (quoting Crawford, 541 U.S. at 52, 124 S.Ct. 1354)). The Amended Delayed Birth Registration was clearly not the routine, objective, cataloguing of a particular factual matter contemplated in Bahenar-Cardenas, but was, instead a document prepared at the prosecutor’s behest “in anticipation of litigation.” 411 F.3d at 1075. Though birth certificates routinely catalogue unambiguous factual matters in general, the Amended Delayed Birth Registration did not. Instead, it captured two Border Patrol agents’ conclusions on a particular factual matter — the location of Macias’s birth — after their review of certain evidence. Thus, even if the Amended Delayed Birth Registration is properly considered part of Macias’s birth certificate, it remains testimonial in nature.
Second, the government asserts that there was no Confrontation Clause violation because California Department of Public Health section chief Karen Roth testified during Macias’s second trial. Roth was called to — and did — testify that the Amended Delayed Birth Registration is part of Macias’s official birth record. The government argues that because Roth so testified at trial, Macias’s argument that a Confrontation Clause violation occurred is “illusory.” That Roth testified is entirely irrelevant, however: the testimonial statements in the Amended Delayed Birth Registration were made by Agents Kahl and Desrosiers, not Roth. Roth’s general testimony regarding the effect of the agents’ amendment on Macias’s birth record does nothing to remedy the government’s failure to call the actual affiants— Agents Kahl and Desrosiers — to the stand during the second trial.
Third, the government argues that if the Amended Delayed Birth Registration is testimonial then, “under Macias’ very own reasoning,” so is the Delayed Birth Registration. The government contends that, like the Amended Delayed Birth Registration, the Delayed Birth Registration contains Macias’s “self-serving” statement as to his birthplace, along with the signatures of two other individuals who attested to their presence at Macias’s birth. The government argues that, under Crawford, an objective witness would reasonably be led to believe the Delayed Birth Registration might be used in future litigation. This argument is a non-sequitur, however. Only Macias, and not the government, has a constitutional right to confront the wit *1028 nesses against him. See U.S. Const. amend. VI (“In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him.”) (emphasis added); Crawford, 541 U.S. at 59, 124 S.Ct. 1354 (“Testimonial statements of witnesses absent from trial have been admitted only where the declar-ant is unavailable, and only where the defendant has had a prior opportunity to cross-examine.”) (emphasis added). Thus, even if Macias’s Delayed Birth Registration is testimonial, its admission does not violate the Confrontation Clause.
C.
The government cannot show that the admission of the Amended Delayed Birth Certificate was “harmless beyond a reasonable doubt.” Tuyet Thi-Bach Nguyen, 565 F.3d at 675. The jury hung at the first trial, and the material difference between the two trials was the admission of the Amended Delayed Birth Registration. Thus, its admission cannot be harmless beyond a reasonable doubt. See United States v. Geston, 299 F.3d 1130, 1136 (9th Cir.2002) (“[Defendant’s] first trial, which did not include the improper questioning, resulted in a mistrial, with the jury unable to reach a verdict. This circumstance leads us to conclude that the improper questioning impacted [Defendant’s] due process rights.”); United States v. Thompson, 37 F.3d 450, 454 (9th Cir.1994) (emphasizing that the hung jury after the first trial was “persuasive evidence that the district court’s error [in the second trial] affected the verdict,” and declining to find harmless error); United States v. Schuler, 813 F.2d 978, 982 (9th Cir.1987) (“Moreover, particularly in view of the prior hung jury, we conclude that the error [at the defendant’s second trial] was not harmless beyond a reasonable doubt.”). Indeed, a comparison of the two trials reveals that substantially similar evidence was presented at each: at both trials, Macias’s father, Felipe, testified that Macias was born in Mexico; at both trials, Macias’s Delayed Birth Registration was presented, along with his parents’ applications for lawful permanent residency, in which Macias was listed as having been born in Mexico; and, at both trials, Macias’s deportation history was presented, with particular emphasis on the number of times that, during those proceedings, he claimed to have been born in Mexico. The material difference between the first and second trials was the admission of the Amended Delayed Birth Registration — a literally new piece of evidence created to secure Macias’s conviction.
The government argues that there was a litany of differences between the two trials. These included, according to the government, the decision to call certain new witnesses, including Macias’s brother Gil Macias, and not call others, specifically Mata. But the decision not to call Mata, whose testimony was obviously not credited by the jury at Macias’s first trial, is not one which shows the harmlessness of the admission of the Amended Delayed Birth Registration. And Gil Macias’s testimony was of little help to the government, as he testified that he was unable to remember Macias’s birth. The government also points to the alteration of its exhibit list, including the decision to present recordings from Macias’s removal hearings before the Immigration Judge, and to the fact that the jury received a new instruction at the conclusion of the second trial. But the government never explains why any of these differences prove the improper admission of the Amended Delayed Birth Registration harmless beyond a reasonable doubt.
Nor is there any basis to conclude beyond a reasonable doubt that the admission of Macias’s Mexican birth certificate, rather than the erroneous admission of the *1029 Amended Delayed Birth Registration, was responsible for the change in outcome from Macias’s first trial to the second. In fact, expert testimony proffered at Macias’s second trial demonstrated that the existence of a Mexican birth certificate is not determinative of an individual’s birthplace: Alejandro Osuna, a professor of law in Mexico, testified that it was common practice at the time of Macias’s birth for Mexican parents of children born in the United States to register their children’s birth in Mexico as well. Osuna testified that obtaining a Mexican birth certificate was critical to the child’s access to education, health, and even property ownership in Mexico. Osuna’s testimony thus demonstrated the relative insignificance of Macias’s Mexican birth certificate to the determination of his citizenship.
Consideration of other factors under the harmless error analysis similarly points to the conclusion that the Confrontation Clause error was not harmless beyond a reasonable doubt. See Tuyet Thi-Bach Nguyen, 565 F.3d at 675 (“ “Whether an error is harmless depends on a variety of factors, including whether the testimony was cumulative, the presence or absence of [evidence] corroborating or contradicting the testimony on material points, the extent of cross-examination, and of course, the overall strength of the prosecution’s case.’ ” (quoting United States v. Mayfield, 189 F.3d 895, 906 (9th Cir.1999))). The Amended Delayed Birth Registration was not cumulative, as no other evidence was offered to' amend Macias’s Delayed Birth Registration, or to alter its significance. And while certain corroborating evidence, cited by the agents in the Amended Delayed Birth Registration as the basis for the amendment, was presented at the second trial,[6] such evidence did not purport to amend the birth certificate. Furthermore, no cross-examination- of Agent Kahl or Agent Desroiers occurred. That Macias called Agent Kahl to the stand and was permitted, on direct examination, to ask him certain leading questions does not render Macias’s inability to cross-examine both agents harmless.
Furthermore, the Amended Delayed Birth Registration was critical to the prosecution’s case. See id.; see also Delaware v. Van Arsdall, 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) (stating that “the importance of the witness’ testimony in the prosecution’s case” is one factor to be considered in determining whether a Confrontation Clause error is harmless). The government relied heavily on the Amended Delayed Birth Registration in its case-in-chief, asking Roth a series of questions about its significance to the Delayed Birth Registration. The government stressed that the Delayed Birth Registration was now a “two-page document” that had been amended-pursuant to procedures developed by the state of California, and which reflected that Macias was “born at a home in Michoacan, Mexico.” In its closing argument, the government repeated its refrain, urging that “[w]e need to be clear that the document on record with the State of California as we sit here today has two pages.” Then, almost defensively, the government argued that Agents Kahl and Desrosiers did “exactly what the representative from the State of California suggested happen,” when they amended Macias’s Delayed Birth Registration.
The Amended Delayed Birth Registration purported to show that Macias’s Delayed Birth Registration — the strongest *1030 piece of evidence in his favor — had been amended to reflect that his actual birthplace was Mexico, not California. To highlight, as the majority does, the mere strength of the evidence supporting the government’s case at the second trial misses the mark, because there was equally strong evidence, presented by the government at the first trial, that Macias was born in Mexico. And we know that the evidence in the first trial was countered by evidence of sufficient strength to create a reasonable doubt in the minds of two jurors. The admission of the Amended Delayed Birth Registration at the second trial in violation of the Confrontation Clause negated the strength of the defense evidence, resulting in a conviction. The government cannot demonstrate that the Crawford error was harmless beyond a reasonable doubt. Thus, the judgment of conviction should be reversed, not affirmed.

. The majority articulates no reason for exercising its discretion to ignore the government’s waiver of the plain error standard of review and its express reliance on the de novo review standard. Indeed, there is no reason why our court should not exercise its discretion to address the merits of Macias’s Confrontation Clause objection here, and every reason why it should. We have found three exceptions to the waiver rule even where the "waiver” has not been waived: “(1) [] the exceptional case in which review is necessary to prevent a miscarriage of justice or to preserve the integrity of the judicial process, (2) when a new issue arises while appeal is pending because of a change in the law, and (3) when the issue presented is purely one of law and either does not depend on the factual record developed below, or the pertinent record has been fully developed.” Ruiz v. Affinity Logistics Corp., 667 F.3d 1318, 1323 (9th Cir.2012) (internal quotation marks omitted). Deciding the Confrontation Clause issue here is necessary "to preserve the integrity of the judicial process.” Whether the admission of the Amended Delayed Birth Registration violated the Confrontation Clause is a purely legal question. And, because the issue was addressed by both parties on the merits, neither is prejudiced by our addressing it. See Ackerman v. W. Elec. Co., 860 F.2d 1514, 1517 (9th Cir.1988) (addressing a waived issue on the merits, stating “[t]he issue has been thoroughly briefed and argued here, and [appellant] has not objected to our consideration of it,” and concluding that, "[b]ecause the issue is one of law and there is no deficiency in the record relating to it, we exercise our discretion to entertain the question”).

. Addressing the hearsay rule embedded in the Confrontation Clause, Chief Justice Marshall wrote, “I know of no principle in the preservation of which all are more concerned. I know none, by undermining which, life, liberty and property, might be more endangered. It is therefore incumbent on courts to be watchful of every inroad on a principle so truly important.” United States v. Burr, 25 F.Cas. 187, 193 (No. 14,694) (C.C.D.Va.1807) (Marshall, C.J.). So too here.

. Mata also testified at the first trial that Macias admitted to him that he was a citizen of Mexico, and that he previously had personally removed Macias to Mexico. Evidently, Mata's testimony was insufficient to establish Macias's Mexican citizenship.

. The agents certified “under penalty of perjury” in the Amended Delayed Birth Registration that they had "personal knowledge” of the facts and information they used to amend the birth certificate, including the location of Macias's birth. The agents did not have personal knowledge that Macias was born in Yurecuaro, Mexico, so they not only ginned up the evidence; they fudged in doing so. See United States v. Lopez, 762 F.3d 852, 863 (9th Cir.2014) ("Personal knowledge means knowledge produced by the direct involvement of the senses.”). The Assistant U.S. Attorney frankly acknowledged that the agents submitted the affidavit at her direction; we must presume she understands the legal meaning of "personal knowledge,” and that she was aware that the agents lacked personal knowledge of the circumstances of Macias's birth.

.There were a host of other problems with the Amended Delayed Birth Registration raised by Macias in his motion in limine. Macias argued that the Amended Delayed Birth Registration was hearsay, that the agents lacked personal knowledge of the facts to which they attested, and that the statements constituted impermissible prosecutorial vouching.

. This evidence, as the majority points out, included -the government’s acquisition of Macias’s Mexican birth certificate, Macias’s father’s statement that Macias was born in Mexico, and Macias's parents' applications for lawful permanent residency stating that Macias was born in Mexico.